1  R. Joseph Barton (SBN 212340)
   BARTON & DOWNES LLP
2  1633 Connecticut Ave., N.W. Suite 200
3  Washington, DC 20009
   Tel: (202) 734-7046
4  Email: jbarton@bartondownes.com
5  *Counsel for the Plaintiff*

6

7              **UNITED STATES DISTRICT COURT**
               **CENTRAL DISTRICT OF CALIFORNIA**
8

9  | RACHEL ODEN, on behalf of herself | Case No.: |
   | and a class of all others similarly | |
10 | situated, | |
11 | | |
   |     *Plaintiff*, | |
12 | | **CLASS ACTION COMPLAINT** |
13 | v. | |
14 | | |
   | VERITY HEALTH SYSTEM | |
15 | BENEFITS ADMINISTRATION | |
   | COMMITTEE, CHRIS CARSON, | |
16 | PETER CHADWICK, STEVEN C. | |
17 | SHARRER, JOHN DOES 1-20, and | |
   | JANE DOES 1-20 | |
18 | | |
19 |     *Defendants* | |
20

21

22

23

24

25

26

27

28

COMPLAINT

## I.    JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

2.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District.

## II.    INTRODUCTION

3.    This ERISA action is brought on behalf of a Class of participants in and beneficiaries of the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, alleging that the Verity Health System Benefits Administration Committee and its members breached their fiduciary duties by failing to take steps to protect Plan participants and improperly operating the Plan.

4.    Plaintiff is the surviving daughter of the late Loraine Oden, a nurse with the Daughters of Charity Health System and was her beneficiary under the Plan. When her mother passed away in 2008, Plaintiff became entitled to an annuity under the Plan. But in 2020, the Pension Benefit Guaranty Corporation ("PBGC") informed her that her monthly benefit would be reduced from $830.98 to $540.14 because the Plan was underfunded and underinsured.

5.    Verity Health System was the successor to Daughters of Charity Health System, a group of hospitals in southern California. Daughters of Charity Health System operated its retirement pension plan as if it was a "church plan." But Daughters of Charity Health System was not a church, it had an insufficient relationship with the Roman Catholic church (or any church) to claim that its Plan was a church plan or that it was exempt from ERISA. Had the Daughters of Charity not improperly claimed church plan status, the Plan would have had to

meet the funding requirements of ERISA and the plan sponsor/employer would have been paid premiums to the PBGC.

6.    Daughters of Charity became Verity Health System in 2015, after the hospitals were bought by a private equity firm. The new, avowedly secular ownership amended the Daughters of Charity pension plan (now the Verity Health System Retirement Plan) to make it subject to ERISA and covered by PBGC insurance. But they took no action against the persons who had improperly operated the Plan as a church plan, left the Plan severely underfunded and had failed to pay PBGC premiums.

7.    Verity Health System declared bankruptcy in 2018, and the PBGC assumed responsibility for the now terminated Plan in 2019. Because the Plan had only been covered by PBGC insurance for two full years as of the date Verity Health Systems declared bankruptcy, the PBGC only guaranteed 40% of the pension benefits of Plaintiff and the Class.

8.    Had the Benefits Administration Committee timely filed suit against former fiduciaries of the Plan who had improperly operated it as a church plan, and/or the prior employer/plan sponsor, they could have remedied the Plan's underfunding. As a result of the Benefits Administration Committee failure to properly take such corrective action as part of its fiduciary duties, Plaintiff and other members of the Class have been harmed by having their benefits reduced as a result of the Plan's underfunding and lack of payment of insurance premiums to the PBGC for the amount of time it would have ensured fully-insured benefits by the PBGC after Verity declared bankruptcy.

## III.    INTRA-DISTRICT ASSIGNMENT

9.    Plaintiff resides in the Western Division of the Central District of California.

10.    Based on Plaintiff's counsel's investigation, Defendant Carson resides in Long Beach, California, Defendant Chadwick resides outside the Central

CLASS ACTION COMPLAINT                                                3

District of California, the place of residence of Steven C. Sharrer and the other unknown members of the Committee are unknown to Plaintiff.

11. The alleged breaches took place in the Western Division of the Central District of California.

## IV. PARTIES

### Plaintiff

12. Plaintiff Rachel Oden is the daughter of the late Loraine Oden. Loraine Oden was a former employee at St. Francis Medical Center and a participant in the Daughters of Charity Health System Retirement Plan, later renamed Verity Health System Retirement Plan A (the "Plan," and together with Verity Health System Retirement Plan B, the "Plans"). Plaintiff Oden is Loraine Oden's beneficiary under the terms of the Plan within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8), because she was a person designated by Loraine Oden to receive an annuity under the Plan in event of Loraine Oden's death.

### Defendants

*Benefits Administration Committee Defendants*

13. Defendant Verity Health System Benefits Administration Committee is an unincorporated organization or unincorporated association. The Committee is a person within the meaning of ERISA § 3(9), 29 U.S.C. § 1002(9). As a result of the Benefits Administration Committee being designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, and because the Benefits Administration Committee and its members had discretionary authority or responsibility for the administration of the Plan, Defendant Verity Health System Benefits Administration Committee was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

14. Defendant Chris Carson was, based on her LinkedIn profile, a Vice President Human Resources at St. Vincent Medical Center from June 2007 through

March 2017. From March 2017 through March 2018, she was a Special Advisor in Human Resources at Verity Health System. Based on her LinkedIn profile, Defendant Carson was a member of the Benefits Administration Committee during her employment with St. Vincent Medical Center/Verity Health System. As a result of the Benefits Administration Committee being designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, and because the Benefits Administration Committee and its members had discretionary authority or responsibility for the administration of the Plan, Defendant Carson was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A). Based on her LinkedIn profile, Defendant Carson resides in Long Beach, California.

15.     Peter Chadwick is, based on his profile on the BRG website, a managing director at BRG and the CFO of Verity Health System. Based on (a) his execution of the Plan's annual Form 5500 for the Plan Year ending April 30, 2019, signing as Plan Administrator, (b) the fact that the Benefits Administration Committee had been designated as the Plan Administrator of the Plan, and (c) a statement in a declaration by Defendant Chadwick dated December 1, 2020, that as the CFO of Verity Health Systems he had been working with attorneys in Verity Health System's Chapter 11 bankruptcy for "approximately 24 months," Defendant Chadwick was a member of the Benefits Administration Committee at least during 2019. Defendant Chadwick resides in Washington, D.C. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, and because the Benefits Administration Committee and its members had discretionary authority or responsibility for the administration of the Plan, Defendant Chadwick was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A).

16.    Defendant Steven C. Sharrer was the Chief Human Resources Officer for Verity Health System between at least August 21, 2017, and April 23, 2019. Based on filings in the Bankruptcy Court for the Central District of California, Defendant Sharrer was also a member of the Benefits Administration Committee during his employment with Verity Health System. As a result of the Benefits Administration Committee being designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, and because the Benefits Administration Committee and its members had discretionary authority or responsibility for the administration of the Plan, Defendant Sharrer was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A). Defendant Sharrer's place of residence is unknown to Plaintiff.

17.    John Does 1-10 and Jane Does 1-10 are the unknown members of the Benefits Administration Committee between December 14, 2015, and October 15, 2019.

18.    Defendants The Benefits Administration Committee and Defendants Carson, Chadwick, Sharrer, and John and Jane Does 1-10 are the Benefits Administration Committee Defendants.

*Director Defendants*

19.    John Does 11-20 and Jane Does 11-20 are the unknown members of the Board of Directors of Verity Health System between December 14, 2015, and October 15, 2019. Under Section 3.1 of the 2015 Plan Document, the Board of Directors of Verity Health System had the authority to appoint members of the Benefits Administration Committee and to remove directors, with or without cause. John and Jane Does 11-20 are the Director Defendants.

## V.    CLASS ACTION ALLEGATIONS

20.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

All participants in the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B and beneficiaries of such participants whose benefits were reduced by the Pension Benefit Guaranty Corporation because the Plans were underfunded and underinsured.

Excluded from the Class are Defendants and their immediate families, any other individual who served as a fiduciary of the Plan and his or her immediate families, persons who served as officers or directors of the Daughters of Charity Health System or Verity Health System and their immediate families, and legal representatives, successors, and assigns of any such excluded persons.

21.     **Impracticality of Joinder**. The members of the Class are so numerous that joinder of all members is impracticable. According to a document entitled "Questions and Answers for Participants in the Verity Health System Plans" provided to Plaintiff by the PBGC, there were approximately 7,000 participants in the Verity Health System Retirement Plan A and 1,000 participants in Verity Health System Retirement Plan B at the time of the termination of the Plans in 2019.

22.     **Commonality**. The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts. The common issues include whether Defendants breached fiduciary duties to participants by failing to bring suit against other fiduciaries of the Plans and the appropriate relief for Defendants' violations of ERISA.

23.     **Typicality**. Plaintiff's claims are typical of the claims of other members of the Class because their claims arise from the same event, practice, and course of conduct. Specifically, Plaintiff, on behalf of the Class, alleges Defendants breached their fiduciary duties to plan participants and their beneficiaries by failing to seek relief against former fiduciaries of the Plans on behalf of the Plans and their participants to remedy their underfunding in violation of ERISA.

24.    **Adequacy**. Plaintiff will fairly and adequately represent the Class. She has no interests antagonistic to or in conflict with those of the Class, Defendants' have no unique defenses against her that would interfere with her representation of the Class, and she is represented by counsel with extensive experience litigating ERISA class actions.

25.    **Rule 23(b)(1)**. The requirements of Fed. R. Civ. P. 23(b)(1) are satisfied as to the Class because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

26.    **Rule 23(b)(2)**. The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive appropriate with respect to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants breached their fiduciary duties and appropriate equitable relief for those breaches. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

27.    **Rule 23(b)(3)**. The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants breached their fiduciary duties to the Plan. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. And a class action is a superior method to other available methods for the fair and efficient adjudication of this action, including because no other litigation concerning this controversy has been filed by any other members of the Class, because this District is the most desirable location for concentrating this

litigation given the presence of the majority of Class members in this district, and because of the proximity of witnesses.

## VI.  FACTUAL ALLEGATIONS

### Loraine Oden's Employment with the Daughters of Charity Health System and Participation in the Plan

28.    Loraine Oden was employed by the Daughters of Charity Health System from approximately October 27, 1981 through May 5, 2005. During her entire employment by Daughters of Charity Health System, she worked at St. Francis Medical Center as a registered nurse.

29.    Loraine Oden passed away on February 8, 2008.

30.    During her employment and until her death in 2008, Loraine Oden was a participant in the retirement plan sponsored by the Daughters of Charity Health System and later Verity within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7). During the time that the Plan was sponsored by the Daughters of Charity Health System, there was no single document that constituted the written instrument of the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102. Based on the document provided by the PBGC to Plaintiff, as of 2015, the written instrument of the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102, was entitled the Verity Health System Retirement Plan (Amended and Restated Effective December 14, 2015) ("the 2015 Plan Document").

31.    Based on the 2015 Plan Document, the Plan's standard form of benefit was a monthly payment to participants upon retirement. The monthly benefit amount was calculated using a formula that took into account factors including the participant's earnings prior to retirement and years of service.

32.    The Plan provided for the election of one of several alternative forms of pension. Loraine Oden elected a form of pension described by the Plan Document as the "contingent retirement income option." This option provided for a reduced retirement income to the retired participant, but provided a contingent

annuitant designated by the retired participant a monthly retirement income from the death of the participant through the death of the annuitant.

33.    Plaintiff Rachel Oden, Loraine Oden's daughter, was her beneficiary and designated contingent annuitant under the Plan.

34.    Upon Loraine Oden's death, Rachel Oden began to receive a monthly benefit in the amount of $830.98.

**Background of the Plan**

35.    The Daughters of Charity Health System was a California not-for-profit corporation organized under, and governed by, California's Nonprofit Corporation Law, California Corporations Code §§ 5000 *et seq*.

36.    Until 1995, the Daughters of Charity Health System member hospitals were part of the Daughters of Charity National Health System, which was established in 1986.

37.    In 1995, six hospitals—O'Connor Hospital in San Jose, California, St. Louise Regional Hospital in Gilroy, California, Seton Medical Center in Daly City, California, Seton Coastside in Moss Beach, California, St. Francis Medical Center in Lynwood, California, and St. Vincent Medical Center in Los Angeles, California—spun off from the Daughters of Charity National Health System and merged into Catholic Healthcare West.

38.    According to the Verity Health System Retirement Plan's Form 5500 for the Plan Year ending December 31, 2015, the Plan was originally effective May 25, 1995, as a result of the spin-off of assets and liabilities from the Daughters of Charity National Health System Retirement Plan.

39.    In 2001 and 2002, the six hospitals withdrew from Catholic Healthcare West and reincorporated as the Daughters of Charity Health System.

40.    The Plan was, until December 14, 2015, operated under the name "The Daughters of Charity Health System Retirement Plan."

41.    The Plan covered Daughters of Charity Health System employees at member hospitals St. Francis Medical Center and St. Vincent Medical Center, as well as at the Daughters of Charity Health System's central system office.

42.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System described the benefits provided by the Plan to employees in various communications, but never established the Plan pursuant to a written instrument.

43.    The Daughters of Charity Health System was responsible for setting the funding requirements of the Plan, as well as setting a funding policy for the Plan. Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System failed to set a funding policy that would adequately fund the anticipated obligations of the Plan every year since at least approximately 2010.

44.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System had failed to make contributions to the Plan in satisfaction of the minimum funding requirements of ERISA § 302, 29 U.S.C. § 1082 since at least 2002.

45.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), in 2012, the Daughters of Charity Health System adopted a funding policy that amortized over ten years the unfunded liability as of January 1, 2012, and required the Health System to make payments accordingly. By that point, the Plan was already underfunded by millions of dollars.

46.    As of December 31, 2013, the Daughters of Charity National Health System Retirement Plan was underfunded by more than $229 million.

47.    By adopting a funding policy that amortized over ten years the significant unfunded liabilities of the plan, the Daughters of Charity Health System made the decision not to address the Plan's severe underfunding in a timely

fashion, instead endangering the retirement security of thousands of Plan participants.

48.     In setting a funding policy that was so profoundly inadequate, the Daughters of Charity Health System and other fiduciaries of the Plan breached their duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) (B), to administer the plan prudently and in the best interests of Plan participants and beneficiaries.

49.     According to the Plan's Form 5500 for the Plan Year ending December 31, 2015, the Daughters of Charity Health System and its Benefits Administration Committee operated the Plan as if it were a "church plan" described in IRS Code section 414(e) and operated the Plan as if it was exempt from Title I and Title IV of ERISA.

50.     Yet the Plan was not, in fact, a church plan under ERISA. Under ERISA § 3(33), 29 U.S.C. § 1002(33), only two types of plans may qualify as a church plan. *First*, under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), a plan established and maintained by a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of ERISA § 3(33)(B), 29 U.S.C. § 1002(33)(B). *Second*, under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), a plan can qualify if it is maintained by an organization, the principal purpose or function of which is the administration or funding of a plan for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or convention or association of churches, subject to the restrictions of ERISA § 3(33)(B) , 29 U.S.C. § 1002(33)(B).

51.     First, this Plan was established by the Daughters of Charity Health System, not by a church or convention or association of churches. Therefore the Plan was not a church plan under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

52.    Second, this Plan was maintained by the Daughters of Charity Health System and by the Benefits Administration Committee that had been delegated plan administration responsibilities. The principal purpose or function of the Daughters of Charity Health System was operating a system of hospitals, not the administration or funding of a retirement plan. The Benefits Administration Committee also was not associated with a church. Rather, it was associated with the Daughters of Charity Health System, which was not a church, and operated like any other secular, nonprofit, multi-hospital health system.

53.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), by 2014 the Daughters of Charity Health System had more than 7,500 employees.

54.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System specifically did not limit employment to those of the Catholic faith, instead hiring employees without any reference to creed or religion.

55.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the management of the Daughters of Charity Health System was composed primarily of lay people. Its executive officers received compensation in line with executive officers of other hospital systems. At least ten officers or key employees received reportable compensation in excess of half a million dollars in 2013.

56.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System included numerous clinics, physician groups, and individual physician practices throughout California. Many of these practices provided medical services contradicting the teachings of the Roman Catholic Church, including prescribing contraceptives and performing sterilization procedures.

57.     Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System employed chaplains of non-Catholic faiths and offered contact with the minister, priest, rabbi, or spiritual leader of its patients' choosing.

58.     Based on Plaintiff's conversations with her late mother, Loraine Oden, there was no requirement for employees or patients of hospitals associated with the Daughters of Charity Health System to attend mass or otherwise participate in Roman Catholic worship services.

59.     As a result of the foregoing, the Daughters of Charity Health System thus lacked "common religious bonds and convictions" with the Roman Catholic Church in the sense of ERISA 3(33)(C)(iv).

60.     On information and belief, the Benefits Administration Committee had no separate association with the Roman Catholic Church. The Benefits Administration Committee thus lacked "common religious bonds and convictions" with the Roman Catholic Church in the sense of ERISA 3(33)(C)(iv).

61.     Therefore, the Plan was not a church plan under ERISA.

**Daughters of Charity Health System Becomes Verity Health System**

62.     Based on filings in the Bankruptcy Court for the Central District of California, in July of 2015, the Daughters of Charity Health System closed a recapitalization transaction with Blue Mountain Capital Management (the "Verity Transaction"). In the Verity Transaction, the Daughters of Charity Health System was renamed Verity Health System.

63.     Based on contemporaneous news coverage of the Verity Transaction by Catholic Health World, any relationship between Daughters of Charity Province of the West and the hospital system ended at the time of the transaction. Verity Health System was an avowedly secular nonprofit.

64.     Based on the 2015 Plan Document, the Plan was amended and restated at that time so as to make it expressly subject to the requirements of

ERISA because it was "no longer intended to be a 'church plan' ... and is therefore subject to, and is intended to comply with, Title I and Title IV of ERISA."

65.    Based on the Form 5500 for Verity Health System Retirement Plan B for the period ending December 31, 2016, the Board of Directors of Verity Health Systems converted the Verity Health System Retirement Plan into the Verity Health System Retirement Plan A effective December 31, 2016. At the same time, certain assets of the Plan and certain participants in the Plan were spun off into the Verity Health System Retirement Plan B.

66.    On information and belief, the terms of Verity Health System Retirement Plan B were materially similar to the terms of the Plan and the Plan was administered by the same Benefits Administration Committee.

67.    According to a declaration dated April 23, 2019, from Carlos De la Parra who was a director of Willis Towers Watson, actuary to Verity Health Systems for Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, the Plans "were significantly underfunded when Verity took them over on December 14, 2015".

**The Plan is Terminated and Plaintiff's Benefits are Reduced**

68.    Verity Health System filed for bankruptcy protection on August 31, 2018.

69.    Based on a document entitled "Questions and Answers for Participants in the Verity Health System Pension Plans" (the "PBGC Q&A") provided to Plaintiff by the Pension Benefit Guaranty Corporation ("PBGC"), Verity Health System Retirement Plan A and Verity Health System Retirement Plan B were terminated as of April 30, 2019.

70.    Based on the PBGC Q&A, the PBGC took responsibility as trustee for the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B as of October 15, 2019.

71.     Based on the PBGC Q&A, following its termination the Verity Health System Retirement Plan A covered nearly 7,000 people but was only 52% funded—an underfunding of $306 million. At the time of its termination, the Verity Health System Retirement Plan B covered approximately 1,000 people and was 74% funded—an underfunding of $2.8 million.

72.     The PBGC is a federal agency created by ERISA to protect pension benefits in defined benefit plans. If a pension plan is insured by the PBGC and it terminates without sufficient money to pay all benefits, PBGC's insurance program will pay participants the benefit provided by the pension plan up to the limits set by law.

73.     As the PBGC explained in an Estimated Benefit Calculation provided to Plaintiff, "church plans are not required to obtain PBGC coverage." The Verity Health System Retirement Plan A obtained PGBC coverage on December 14, 2015, when it was amended and restated to make it expressly subject to the requirements of ERISA, and only began paying PBGC insurance premiums from that point forward.

74.     Based on an Estimated Benefit Calculation provided by the PBGC to Plaintiff, because the Verity Health System Retirement Plan A had only been covered by PBGC insurance for two full years as of the date Verity Health Systems declared bankruptcy, the PBGC only guaranteed 40% of the pension benefits of Plaintiff and the Class.

75.     As a result of this reduced guarantee, in an Estimated Benefit Calculation provided by the PBGC to Plaintiff the PBGC calculated that Plaintiff's Plan monthly benefit would be reduced from $830.98 to $540.14 beginning September 1, 2020. Had the Plan been operated as an ERISA-covered plan by August 31, 2013, Plaintiff's monthly benefit would have been $830.14.

76.     In a form communication, the PBGC explicitly informed Plaintiff that her benefit was being reduced because the Plan had been underfunded and

underinsured. Under a heading reading "**Why is my benefit being reduced**?" the PBGC explained:

> PBGC cannot pay your full benefit *because the Verity pension plans were not covered by PBGC insurance for the time period required by law for a full guarantee*. Under federal law, a pension plan must be insured for five full years for the PBGC guarantee to be fully phased-in. PBGC guarantees 20% of the benefit for each full year the plan was insured before the sponsoring employer files for bankruptcy.
>
> When Verity filed for bankruptcy protection on August 31, 2018, the plan had been covered by PBGC only for two full years. This means PBGC can guarantee 40% of your plan benefit. Some participants will receive more than 40% because the pension plan had enough assets to make up part of the shortfall between the PBGC guarantee and the full benefit.

(emphasis added)

77.    In June 2020, Plaintiff requested information from the PBGC including "the Verity Health System Plan documents." The only document produced by the PBGC in response was the written instrument of the Verity Health System Retirement Plan, amended and restated December 14, 2015.

78.    In March of 2023, Plaintiff requested from the PBGC all the documents described by ERISA § 104(b), including "(1) the latest updated summary plan description; (2) any summaries of material modifications to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes, (4) any summary annual reports for the Plan, (5) any bargaining agreement, trust agreement, contract, or (6) other instruments under which the plan is established or operated, and any applicable amendments, and (7) my annual benefit statements." PGBC responded by producing only its correspondence to Plaintiff dated July 8, 2020, explaining that her monthly benefit was being reduced.

**Allegations Regarding ERISA's Statute of Limitations**

79.    ERISA § 413, 29 U.S.C. § 1113 provides that

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

80.    The violations alleged in this complaint are in the nature of omissions: the failure of the Plan's fiduciaries following its formal amendment and conversion to an ERISA governed plan on December 14, 2015, to take any action against the prior employer, Daughters of Charity Health System or the Plan fiduciaries who had for years improperly operated the Plan as a church plan, leading to its persistent underfunding and failure to pay PGC.

81.    The latest date on which Defendants could have brought suit to cure these violations was on October 15, 2019, when the PBGC assumed control of the Plans.

82.    To the extent the underlying claims against the Daughters of Charity Health System or the Plan fiduciaries were based in ERISA, the statute of limitations on those claims would not have expired until six years after December 14, 2015, or December 14, 2021. To the extent the underlying claims against the Daughters of Charity fiduciaries were based in state law, California's four year

statute of limitations for breaches of fiduciary duty would have applied and expired on December 14, 2019.

83.    The statute of limitations under ERISA § 413(1)(B) thus runs no later than October 15, 2025, six years after October 15, 2019.

84.    Plaintiff first learned that her benefits would be reduced due to the underfunding and underinsurance of the Plan by a letter from the PBGC in June 2020. But that letter informed Plaintiff that the "pension plan was a church plan, sponsored by a religious organization." Plaintiff did not learn until at least December 2023 (if not later) that the pension plan had not been sponsored by a church or other religious organization for some years prior to the acquisition by Verity. Only sometime after December 2023 did Plaintiff obtain actual knowledge of the facts that the Plan had been administered by the Benefits Administration Committee, the identities of the some of the members of the Benefits Administration Committee, and the facts that the both the Daughters of Charity Health System and the Benefits Administration Committee lacked common bonds and conviction with the Roman Catholic Church and that the prior fiduciaries of the Plan had failed to take steps to protect the participants by no earlier than December 2023. The statute of limitations under ERISA § 413(2) would thus run no later than December 2026 and Plaintiff's claims are timely.

**Select Provisions of the 2015 Plan Document**

85.    Since 2015, the written instrument of the Plan, within the meaning of ERISA § 402, has been the 2015 Plan Document.

86.    Section 2.4 of the 2015 Plan Document defined "Administrator" as "the Plan Sponsor or other person (including a committee) appointed to administer the Plan in accordance with Article 3."

87.    Section 3.1 of the 2015 Plan Document provided in relevant part that "The Plan will be administered by the Administrator which shall be the Plan

CLASS ACTION COMPLAINT                                    19

Sponsor or any person, including a committee consisting of at least three individuals, appointed from time to time by the Board of Directors."

88.     Section 3.2 of the 2015 Plan Document provided in relevant part that "The Administrator will have full discretionary power and authority to administer the Plan in all of its details, subject, however, to the requirements of ERISA. For this purpose the Administrator's discretionary power and authority will include, but will not be limited to, the following: (a) To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan; (b) To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan; (c) To decide all questions concerning the Plan and the eligibility of any person to participate in the Plan; (d) To compute the amount of benefits which will be payable to any Participant or other person in accordance with the provisions of the Plan, and to determine the person or persons to whom such benefits will be paid; (e) To authorize the payment of benefits; (f) To appoint such agents, counsel, accountants, consultants and actuaries as may be required to assist in administering the Plan; and (g) To allocate and delegate its fiduciary responsibilities under the Plan, and to designate other persons to carry out any of its fiduciary responsibilities under the Plan, any such allocation, delegation or designation to be by written instrument and in accordance with section 405 of ERISA."

89.     Section 3.5 of the 2015 Plan Document provided that "The Administrator will be a "named fiduciary" for purposes of section 402(a)(1) of ERISA with authority to control and manage the operation and administration of the Plan. The Administrator will be responsible, among other things, for complying with the reporting and disclosure requirements of Part I of Subtitle B of Title I of ERISA."

## COUNT I

**Breach of Fiduciary Duty in Violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1), Against the Benefits Administration Committee Defendants Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

90. Plaintiff incorporates the preceding paragraphs as though set forth herein.

91. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

92. Among the assets of an employee benefit plan under ERISA is a "chose in action"—the right to bring an action to recover a debt, money or a thing—including to institute a lawsuit for a breach of fiduciary duties or other violations including failure to properly fund the plan or pay PBGC premiums. Prior to December 14, 2015, the Daughters of Charity Health System and prior Plan fiduciaries had improperly operated the Plan as a church plan, had failed to comply with ERISA's pension funding requirements, had failed to pay PBGC premiums and breached their fiduciary duties.

93. Pursuant to Section 3.2 of the 2015 Plan Document, the Plan Administrator had "full discretionary power and authority to administer the Plan in all its details.

94. Pursuant to Section 3.2(f) of the 2015 Plan Document, the Plan Administrator had the power to "appoint such agents, accountants, consultants, and actuaries as may be required to assist in administering the Plan."

95. As a result of the provisions in Section 3.2, the Plan Administrator had the power to bring actions on behalf of the Plan and the authority to institute claims against the Plan's prior fiduciaries and employer/plan sponsor.

96.     Section 3.1 of the 2015 Plan Document provides that the Plan was administered by "the Administrator which shall be the Plan Sponsor or any person, including a committee consisting of at least three individuals, appointed from time to time by the Board of Directors…."

97.     Based on a declaration executed by Defendant Sharrer in connection with the Verity bankruptcy, the Board of Directors of Verity Health Systems appointed the Benefits Administration Committee to act as or on behalf of the Plan Administrator.

98.     Based on the Plan's provision giving the Benefits Administration Committee the power to appoint agents as required to assist in managing the Plan, the Benefits Administration Committee Defendants had the power to engage counsel to institute claims against Daughters of Charity Health System and prior Plan fiduciaries.

99.     The Benefits Administration Committee Defendants also had the power to institute claims for prohibited transactions under ERISA against Verity Health Systems because the failure to set a prudent funding policy constituted an extension of credit by the Plan to Verity Health System in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

100.    Alternatively, the Benefits Administration Committee Defendants, had the power to institute claims for breach of fiduciary duty under California state law against Plan fiduciaries and Daughters of Charity Health System (and its successor, Verity Health System) which had caused the persistent and severe underfunding of the Plan and adopted inadequate measures to remedy its severe underfunding.

101.    Had the Benefits Administration Committee Defendants instituted claims in litigation against the pre-Verity fiduciaries or the Daughters of Charity Health System pursuant to either ERISA or California state law, Defendants would have recovered assets for the benefit of the Plan that would have mitigated or

eliminated the underfunded status of the Plan or could have required payment of PBGC premiums.

102. Had the Benefits Administration Committee Defendants eliminated the underfunded status of the Plan through such litigation prior to October 15, 2019 or provided the proper premium payments, when the PBGC took responsibility for the Plans, the benefits of Plaintiff and other members of the Class would have been paid in full.

103. Had Defendants mitigated the underfunded status of the Plan through such litigation prior to October 15, 2019, when the PBGC took responsibility for the Plans or required payment of the PBGC premiums, the benefits of Plaintiff and other members of the Class would not have been reduced or would have been reduced by less because of the additional Plan assets available for the PBGC to allocate among participants in the Plans.

104. In failing to manage the choses-in-action of the Plans against the pre-Verity fiduciaries, Defendants thus failed to manage the assets of the Plan with care, skill, diligence, and prudence in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

105. The defendants in such an action would have included Verity Health Systems (as successor of Daughters of Charity Health Systems) as well as former or current members of the Benefits Administration Committee appointed by the Daughters of Charity Health Systems. On information and belief, Defendants' failure to manage the choses-in-action of the Plans against former fiduciaries were motivated at least in part by unwillingness on the part of members of the Benefits Administration Committee to sue themselves, other executives and employees of Verity Health Systems, or Verity Health Systems. Defendants thus placed the interests of themselves, of other executives and employees of Verity Health Systems, and of Verity Health Systems ahead of the interests of participants in the Plans in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

**COUNT II**
**Breach of Duty to Monitor Pursuant to**
**ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B)**
**Against the Director Defendants**

106.   Plaintiff incorporates the preceding paragraphs as though set forth herein.

107.   Pursuant to Section 3.1 of the 2015 Plan Document, the Board of Directors of Verity Health System appointed the Benefits Administration Committee and had the power to remove them. Pursuant to that authority, the Director Defendants had a duty to monitor the Trustees' conduct and to take appropriate action if those fiduciaries were not adequately protecting the interests of the ESOP participants, including removing the Trustees and/or correcting any breaches.

108.   The Director Defendants knew, or, if they had properly performed their duty to monitor pursuant to prudent monitoring procedures, would have known that the Daughters of Charity pension plan had been improperly operated as a church plan prior to the Verity Transaction, and that the Benefits Administration Committee Defendants had taken no action to institute litigation against Daughters of Charity Health System and the former fiduciaries of the Plan who had caused it to be improperly operated as a church plan.

109.   The Director Defendants nevertheless took no steps to protect Plan participants or otherwise remedy the violations, including by as necessary removing the members of the Benefits Administration Committee and appointing members who would pursue claims against the Daughters of Charity Health System and/or the former fiduciaries of the Plan.

110.   By failing to properly monitor and/or take appropriate action against the Benefits Administration Committee Defendants, the Director Defendants

breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

## COUNT III
### Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105
### Against All Defendants

111.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

112.    ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (2) "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

113.    Each of the Defendants knew or through a proper review would have discovered that the Daughters of Charity Health System and the pre-Verity fiduciaries had purported to operate the Plan as a church plan in violation of ERISA. Had Defendants properly exercised their fiduciary duties, Defendants would have discovered that operating the Plan as a church plan was improper and the prior fiduciaries had breached their fiduciary duties and the prior fiduciaries and the Daughters of Charity Health System engaged in prohibited transactions in violation of ERISA.

114.    Had they properly exercised their fiduciary duties, the Benefits Administration Committee Defendants would have been fully informed as to the persistent and severe underfunded status of the plan, the failure to pay PBGC premiums and the lack of any common religious bonds and convictions between either the Daughters of Charity Health System or the Benefits Administration Committee on the one hand and the Roman Catholic Church on the other hand.

115.   Because they were empowered to employ legal and other advisors, the failure of the Benefits Administration Committee Defendants to bring suit against the Daughters of Charity Health System and the pre-Verity fiduciaries breached their duties to comply with ERISA § 404(a)(1) in the administration of their specific responsibilities as fiduciaries including by, if necessary, bringing suit against the pre-Verity Transaction fiduciaries and Daughters of Charity Health System. This failure enabled the pre-Verity Transaction fiduciaries and Daughters of Charity Health System to violate ERISA in holding out the Plan as a church plan, persistently and severely underfunding the plan, causing the Plan to extend credit to the Daughters of Charity Health System, and failing to adopt a funding strategy reasonably calculated to address the Plan's underfunding in a timely fashion and failing to pay PBGC premiums.

116.   As members of the Board of Directors of Verity Health System, the Director Defendants would have been fully informed as to the persistent and severe underfunded status of the plan, the failure to pay PBGC premiums and the lack of any common religious bonds and convictions between either Daughters of Charity Health System or the Benefits Administration Committee on the one hand and the Roman Catholic Church on the other hand.

117.   Because they had the power to appoint and remove members of the Benefits Administration Committee, the failure of the Director Defendants to monitor the Benefits Administration Committee and, as necessary, remove its members enabled the Benefits Administration Committee Defendants to violate ERISA by violating their fiduciary duties to bring suit against the former fiduciaries of the Plan.

### ENTITLEMENT TO RELIEF

118.   By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. §

1132(a)(3), to sue each of the Defendants for any appropriate equitable relief to redress the wrongs described above.

### PRAYER FOR RELIEF

Wherefore, Plaintiff prays that judgment be entered against Defendants on each claim and be awarded the following relief:

A.    Declare that Defendants have each breached their fiduciary duties under ERISA and violated various statutory provisions of ERISA (or, alternatively, breached their fiduciary duties under California state law);

B.    Award the equitable remedy of surcharge against Defendants to make Plaintiff and other members of the Class whole;

C.    Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

D.    Award pre-judgment interest and post-judgment interest; and

E.    Award such other and further relief that the Court determines that Plaintiff is entitled to pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

Dated: August 30, 2024                          Respectfully submitted,

R. Joseph Barton (SBN 212340)
BARTON & DOWNES LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@bartondownes.com

*Attorney for Plaintiff*