R. Joseph Barton (SBN 212340)
THE BARTON FIRM LLP
1633 Connecticut Ave., N.W. Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com
*Counsel for the Plaintiff*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RACHEL ODEN, on behalf of herself and a class of all others similarly situated, <br><br> *Plaintiff*, <br><br> v. <br><br> RICHARD G. ADCOCK, ERNEST H. AGATSTEIN, B. JOSEPH BADALIAN, JAMES BARBER, TERRY BELMONT, CHRIS CARSON, PETER CHADWICK, TY CONNER, MITCHELL CREEM, ANITA CHOU, JEFFREY FLOCKEN, STEPHEN FORNEY, MICHAEL KATZ, JACK KROUSKUP, CHARLES PATTON, JAMES PIERI, ANDREW PINES, DAVID SACHS, CHRISTOBEL E. SELECKY, and STEVEN C. SHARRER, <br><br> *Defendants* | Case No.: 2:24-cv-07430-CV-RAO <br><br><br> **AMENDED CLASS ACTION COMPLAINT** |

AMENDED COMPLAINT

## I.    JURISDICTION AND VENUE

1.    Plaintiff brings this action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq*. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2) because this action arises under the laws of the United States and pursuant to 29 U.S.C. § 1132(e)(1).

2.    Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because the breaches and violations giving rise to the claims occurred in this District.

## II.    INTRODUCTION

3.    This ERISA action is brought on behalf of a Class of participants in and beneficiaries of the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, alleging that the members of the Verity Health System Benefits Administration Committee breached their fiduciary duties by failing to take steps to protect Plan participants and improperly operating the Plan and the members of the Board breached their fiduciary duties in failing to properly monitor the members of the Benefits Administration Committee.

4.    Plaintiff is the surviving daughter of the late Loraine Oden, a nurse who was employed by the Daughters of Charity Health System and a participant in the Plan. Plaintiff was Loraine Oden's beneficiary under the Plan. When her mother passed away in 2008, Plaintiff became entitled to an annuity under the Plan. But in 2020, the Pension Benefit Guaranty Corporation ("PBGC") informed her that her monthly benefit would be reduced from $830.98 to $540.14 because the Plan was underfunded and underinsured.  The Plan was underfunded and underinsured because the Plan had been operated as an improper "church plan" and the Plan's fiduciaries took no action to rectify those breaches.

5.    Verity Health System ("Verity" or "Verity Health") was the successor to Daughters of Charity Health System, a group of hospitals in southern California.

AMENDED COMPLAINT                                                              2

Daughters of Charity Health System operated its retirement pension plan as if it was a "church plan." But Daughters of Charity Health System was not a church, it had an insufficient relationship with any church, including the Roman Catholic church, to claim that its Plan was a church plan or that it was exempt from ERISA. Had the Daughters of Charity not improperly claimed church plan status, the Plan would have had to meet the funding requirements of ERISA and the plan sponsor/employer would have been paid premiums to the PBGC.

6.    Daughters of Charity became Verity Health System in 2015, after the hospitals were bought by a private equity firm. Once hospitals became the Verity Health Systems, the new, avowedly secular ownership amended the Daughters of Charity pension plan (now the Verity Health System Retirement Plan) to make it subject to ERISA and covered by PBGC insurance. But they took no action against the persons who had improperly operated the Plan as a church plan, left the Plan severely underfunded and had failed to pay PBGC premiums.

7.    Verity Health System declared bankruptcy in 2018, and the PBGC assumed responsibility for the now terminated Plan in 2019. Because the Plan had only been covered by PBGC insurance for two full years as of the date Verity Health Systems declared bankruptcy, the PBGC only guaranteed 40% of the pension benefits of Plaintiff and the Class.

8.    Had the Benefits Administration Committee taken proper corrective action, including by timely filing suit against the former fiduciaries of the Plan who had improperly operated it as a church plan, and/or the prior employer/plan sponsor to require proper funding, they could have remedied the Plan's underfunding. As a result of the Benefits Administration Committee failure to properly take such corrective action as part of its fiduciary duties, Plaintiff and other members of the Class have been harmed by having their benefits reduced as a result of the Plan's underfunding and lack of payment of insurance premiums to

AMENDED COMPLAINT                                                                                          3

the PBGC for the amount of time it would have ensured fully-insured benefits by the PBGC after Verity declared bankruptcy.

## III.    INTRA-DISTRICT ASSIGNMENT

9.      Plaintiff resides in the Western Division of the Central District of California.

10.      Based on the information available to Plaintiff's counsel, Defendants reside in the following areas: Richard G. Adcock resides in Culver City, California, B. Joseph Badalian resides in the Los Angeles area, Chris Carson resides in Long Beach, California, Peter Chadwick resides in the Washington, D.C. area, Anita Chou resides in Irvine, California, Ty Conner resides in Los Altos, California, Stephen Forney resides in Andover Massachusetts, Michael Katz resides in Redwood City California, David Sachs resides in San Diego California and Steven Sharrer resides in Fishers, Indiana. Based on the information available to Plaintiff's counsel, the Director Defendants reside in the following areas: Ernest H. Agatstein resides in Los Angeles California, James Barber resides in La Canada California, Terry Belmont resides in Corona Del Mar California, Mitchell Creem resides in the Los Angeles area, Jeffrey Flocken resides in Irvine California, Jack Krouskup resides in San Mateo California, Charles Patton resides in Del Mar California, James Pieri resides in the New York City area, Andrew Pines resides in Orinda California, and Christobel E. Selecky resides in Laguna Beach California.

11.      The alleged breaches took place in the Western Division of the Central District of California.

## IV.    PARTIES

### Plaintiff

12.      Plaintiff Rachel Oden is the daughter of the late Loraine Oden. At the time of her death, Loraine Oden was a former employee at St. Francis Medical Center and a participant in the Daughters of Charity Health System Retirement Plan, later renamed Verity Health System Retirement Plan A (the "Plan," and

AMENDED COMPLAINT                                                          4

together with Verity Health System Retirement Plan B, the "Plans"). Plaintiff Oden is Loraine Oden's beneficiary under the terms of the Plan within the meaning of ERISA § 3(8), 29 U.S.C. § 1002(8), because she was a person designated by Loraine Oden to receive an annuity under the Plan in event of Loraine Oden's death.

**Defendants**

*Benefits Administration Committee Defendants*

13.    The Benefits Administration Committee Defendants are Richard A. Adcock, B. Joseph Badalian, Chris Carson, Peter Chadwick, Anita Chou, Ty Conner, Stephen Forney, Michael Katz and David Sachs. They are the members of the Benefits Administration Committee of the Plan at some point between December 14, 2015, and October 15, 2019

14.    Defendant Richard G. Adcock is, according to his LinkedIn profile and company biography, President and CEO of ImmunityBio. His LinkedIn profile also states he was previously CEO of Verity Health System from January 2018 to September 2020 and COO of Verity Health System from September 2017 to December 2017. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Adcock was a member of the Benefits Administration Committee of the Plan from at least 2017 through at least 2019. As the Benefits Administration Committee was designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Adcock was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Based on his LinkedIn profile, Defendant Adcock works in and/or resides in the Los Angeles area.

AMENDED COMPLAINT                                                                 5

15.    Defendant B. Joseph Badalian is, according to his LinkedIn profile, a Principal at Exact Leaders and the President and CEO of BintlB Inc and was previously the Corporate Chief Operating Officer of Verity Health System from September 2016 to August 2017. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Badalian was a member of the Benefits Administration Committee of the Plan from at least 2016 through at least 2017. As the Benefits Administration Committee was designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Badalian was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Badalian works and/or resides in Huntington Beach, California.

16.    Defendant Chris Carson was, based on her LinkedIn profile, a Vice President Human Resources at St. Vincent Medical Center from June 2007 through March 2017 and from March 2017 through March 2018, she was a Special Advisor in Human Resources at Verity Health System. Based on her LinkedIn profile, Defendant Carson was a member of the Benefits Administration Committee during her employment with St. Vincent Medical Center/Verity Health System. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Carson was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Carson resides in Long Beach, California.

AMENDED COMPLAINT                                                                    6

17.    Defendant Peter Chadwick is, based on his profile on the BRG website, a managing director at BRG and the CFO of Verity Health System. Based on (a) his execution of the Plan's annual Form 5500 for the Plan Year ending April 30, 2019, in which he signed as Plan Administrator, (b) the fact that the Benefits Administration Committee had been designated as the Plan Administrator of the Plan, and (c) a statement in a declaration by Defendant Chadwick dated December 1, 2020, that as the CFO of Verity Health Systems he had been working with attorneys in Verity Health System's Chapter 11 bankruptcy for "approximately 24 months," Defendant Chadwick was a member of the Benefits Administration Committee at least during 2019. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Chadwick was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) during at least 2019. Defendant Chadwick resides in the Washington, D.C. area.

18.    Defendant Anita Chou is, according to her LinkedIn profile, CFO at Dignity Health California and, was CFO of Verity Health System from August 2018 to October 2019, SVP of Hospital Finance at Verity Health System from February 2018 to August 2018 and CFO at St. Vincent Medical Center from March 2016 to May 2018. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Chou was a member of the Benefits Administration Committee of Verity from at least 2018 through at least 2019. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Chou was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29

AMENDED COMPLAINT                                                           7

U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Chou resides in Irvine, California 92620.

19. Defendant Ty Conner is, according to his LinkedIn profile, System Executive Director of Capital Markets and Credit Strategy of City of Hope and was previously Treasurer and Interim Corporate Controller of Verity Health System from October 2016 to November 2020. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Conner was a member of the Benefits Administration Committee of Verity from at least 2017 through at least 2019. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Conner was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Conner resides in Los Alto, California.

20. Defendant Stephen Forney is, based on his LinkedIn profile, SVP and CFO of Covenant Health and was previously CFO of Verity Health System from December 2015 to August 2017. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Forney was a member of the Benefits Administration Committee of Verity from at least 2016 through at least 2017. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Forney was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Forney resides in Andover, Massachusetts.

AMENDED COMPLAINT 8

21.     Defendant Michael Katz is, based on his LinkedIn profile, Chief Human Resources Officer of Bay Area Hospital and was previously CHRO, SVP of Verity Health System from May 2016 to July 2017. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Katz was a member of the Benefits Administration Committee of Verity from at least 2016 through at least 2017. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Katz was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Katz resides Redwood City, California.

22.     Defendant David Sachs is, according to his company biography, Chief Financial Officer of ImmunityBio. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Sachs was a member of the Board of Directors of Verity from at least 2017 through at least 2018. As the Benefits Administration Committee was the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Sachs was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Benefits Administration Committee. Defendant Sachs resides in San Diego, California.

23.     Defendant Steven C. Sharrer was the Chief Human Resources Officer for Verity Health System between at least August 21, 2017, and April 23, 2019. Based on filings in the Bankruptcy Court for the Central District of California and on information provided by counsel for Defendants Carson, Chadwick and Sherrer,

AMENDED COMPLAINT                                                            9

Defendant Sharrer was a member of the Benefits Administration Committee during his employment with Verity Health System at least from 2017 to 2019. As the Benefits Administration Committee was designated as the Plan Administrator and a named fiduciary of the Plan in accordance with the terms of the written instrument of the Plan, the members of the Benefits Administration Committee had discretionary authority or responsibility for the administration of the Plan. As a result, Defendant Sharrer was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while he was a member of the Benefits Administration Committee. Defendant Sharrer resides in Fishers Indiana.

*Director Defendants*

24.    The Director Defendants are Ernest H. Agatstein, James Barber, Terry Belmont, Mitchell Creem, Jeffrey Flocken, Jack Krouskup, S. Christina Maggi, Charles Patton, James Pieri, Andrew Pines, and Christobel E. Selecky. The Director Defendants are persons who were the members of the Board of Directors of Verity Health System at some point between December 14, 2015, and October 15, 2019. Under Section 3.1 of the 2015 Plan Document, the Board of Directors of Verity Health System had the authority to appoint members of the Benefits Administration Committee and to remove directors, with or without cause.

25.    Defendant Ernest H. Agatstein is, according to his LinkedIn profile, a urologist in the Los Angeles Metropolitan Area and the Founder of West Coast Urology. Based on Verity Health System of California Inc.'s Form 990s filed with the IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, Defendant Agatstein was a member of the Board of Directors of Verity from December 2015 through at least September 2020. As the Board of Directors had discretionary authority under the Plan, Defendant Agatstein was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Agatstein resides in Los Angeles, California.

AMENDED COMPLAINT                                                            10

26.    Defendant James Barber was, based on Verity's Form 990s filed with the IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, a member of the Board of Directors from January 2017 through at least September 2020. As the Board of Directors had authority under the Plan, Defendant Barber was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Barber resides in La Cañada, California.

27.    Defendant Terry Belmont, was, based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, a member of the Board of Directors from December 2016 through 2019 and was its Secretary in 2018. As the Board of Directors had discretionary authority under the Plan, Defendant Belmont was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Belmont resides in Corona del Mar, California.

28.    Defendant Mitchell Creem is, according to his LinkedIn profile, a Principal at GreenRock, Director at Nutex Health, and President of the Bridgewater Health Group and located in Los Angeles, California. Based on Verity's Form 990s filed with the IRS and his bio on the Nutex Health website, Creem was CEO and CAO of Verity Health from October 2015 to July 2017 and was a member of the Board of Directors of Verity Health from December 2015 through at least July 2016. As the Board of Directors had discretionary authority under the Plan, Defendant Creem was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Creem resides in the Silicon Beach area of Los Angeles, California.

29.    Defendant Jeffrey Flocken is currently a member of the Board of Beacon Healthcare System according to the Beacon Healthcare's website. Based on Verity's Form 990s filed with the IRS and information provided by counsel for

AMENDED COMPLAINT                                                        11

Defendants Carson, Chadwick and Sherrer, Flocken was a member of the Board of Directors from December 2015 through at least December 2017. As the Board of Directors had discretionary authority under the Plan, Defendant Flocken was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Flocken resides in Irvine, California.

30.    Defendant Jack Krouskup is, according to his LinkedIn profile, the Director of Luther Burbank Savings. Based on Verity's Form 990s filed with the IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, Krouskup was Chairman of the Board of Directors of Verity Health Systems from December 2015 through at least April 2021. As the Board of Directors had discretionary authority under the Plan, Defendant Krouskup was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Krouskup resides in San Mateo, California.

31.    Defendant Charles Patton is, according to his LinkedIn profile, a Private Equity Investor and Senior Advisor at CBP in the Los Angeles Metropolitan area. Based on Verity's Form 990s filed with the IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, Patton was a member of the Board of Directors from December 2015 through at least September 2020. As the Board of Directors had discretionary authority under the Plan, Defendant Patton was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Patton resides in Del Mar, California.

32.    Defendant James Pieri is, according to his LinkedIn profile, Managing Partner Chief Investment Officer of Assured Healthcare Partners. Based on information provided by counsel for Defendants Carson, Chadwick and Sherrer, Patton, Pieri was a member and Secretary of the Board of Directors from at least

AMENDED COMPLAINT                                                                      12

2015 through at least 2017. As the Board of Directors had discretionary authority under the Plan, Defendant Pieri was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Pieri is believed to reside in or near New York, New York.

33.    Defendant Andrew Pines is, according to his LinkedIn profile, Chief Financial Officer of HBeat Medical and a board member of Public Health Institute in Orinda, California. Based on Verity's Form 990s filed with the IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, Patton, Pines was a member of the Board of Directors starting December 2016 and was Vice Chairman of the Board from July 1, 2017 through at least April 2021. As the Board of Directors had discretionary authority under the Plan, Defendant Pines was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A) while a member of the Board of Directors. Defendant Pines resides in Orinda, California.

34.    Defendant Christobel E. Selecky is, according to her LinkedIn profile, a board member of various health related companies and a "Healthcare Entrepreneur" located in Laguna Beach, California. Based on Verity's Form 990s filed with the IRS IRS and information provided by counsel for Defendants Carson, Chadwick and Sherrer, Patton, Selecky was a member of the Board of Directors from January 2017 through at least September 2020. As the Board of Directors had discretionary authority under the Plan, Defendant Selecky was a fiduciary of the Plan within the meaning of ERISA § 3(21)(A), 29 U.S.C § 1002(21)(A). Defendant Selecky resides in Laguna Beach, California.

## V.    CLASS ACTION ALLEGATIONS

35.    Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

All participants in the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B and beneficiaries of such

AMENDED COMPLAINT                                                                 13

participants whose benefits were reduced by the Pension Benefit Guaranty Corporation because the Plans were underfunded and underinsured.

Excluded from the Class are Defendants and their immediate families, any other individual who served as a fiduciary of the Plan and his or her immediate families, persons who served as officers or directors of the Daughters of Charity Health System or Verity Health System and their immediate families, and legal representatives, successors, and assigns of any such excluded persons.

36.    **Impracticality of Joinder**. The members of the Class are so numerous that joinder of all members is impracticable. According to a document entitled "Questions and Answers for Participants in the Verity Health System Plans" provided to Plaintiff by the PBGC, there were approximately 7,000 participants in the Verity Health System Retirement Plan A and 1,000 participants in Verity Health System Retirement Plan B at the time of the termination of the Plans in 2019.

37.    **Commonality**. The issues of liability are common to all members of the Class and are capable of common answers as those issues primarily focus on Defendants' acts. The common issues include whether Defendants breached fiduciary duties to participants by failing to bring suit against other fiduciaries of the Plans and the appropriate relief for Defendants' violations of ERISA.

38.    **Typicality**. Plaintiff's claims are typical of the claims of other members of the Class because their claims arise from the same event, practice, and course of conduct. Specifically, Plaintiff, on behalf of the Class, alleges Defendants breached their fiduciary duties to plan participants and their beneficiaries by failing to seek relief against former fiduciaries of the Plans on behalf of the Plans and their participants to remedy their underfunding in violation of ERISA.

39.    **Adequacy**. Plaintiff will fairly and adequately represent the Class. She has no interests antagonistic to or in conflict with those of the Class,

AMENDED COMPLAINT                                                                14

Defendants' have no unique defenses against her that would interfere with her representation of the Class, and she is represented by counsel with extensive experience litigating ERISA class actions.

40.    **Rule 23(b)(1)**. The requirements of Fed. R. Civ. P. 23(b)(1) are satisfied as to the Class because adjudications with respect to individual class members would, as a practical matter, be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

41.    **Rule 23(b)(2)**. The requirements of Fed. R. Civ. P. 23(b)(2) are satisfied as to the Class because Defendants have acted and/or failed to act on grounds generally applicable to the Class, making declaratory and injunctive appropriate with respect to the Class as a whole. The relief sought in this case primarily consists of declarations that Defendants breached their fiduciary duties and appropriate equitable relief for those breaches. As ERISA is based on trust law, any monetary relief consists of equitable monetary relief that would either flow directly by the declaratory or injunctive relief or flows as a necessary consequence of that relief.

42.    **Rule 23(b)(3)**. The requirements of Fed. R. Civ. P. 23(b)(3) are also satisfied. The common questions of law and fact concern whether Defendants breached their fiduciary duties to the Plan. Common questions related to liability will necessarily predominate over any individual questions precisely because Defendants' duties and obligations were uniform to all participants and therefore all members of the Class. And a class action is a superior method to other available methods for the fair and efficient adjudication of this action, including because no other litigation concerning this controversy has been filed by any other members of the Class, because this District is the most desirable location for concentrating this litigation given the presence of the majority of Class members in this district, and because of the proximity of witnesses.

AMENDED COMPLAINT                                                                15

## VI.   FACTUAL ALLEGATIONS

### Loraine Oden's Employment with the Daughters of Charity Health System and Participation in the Plan

43.     Loraine Oden was employed by the Daughters of Charity Health System from approximately October 27, 1981 through May 5, 2005. During her entire employment by Daughters of Charity Health System, she worked at St. Francis Medical Center as a registered nurse.

44.     Loraine Oden passed away on February 8, 2008.

45.     During her employment and until her death in 2008, Loraine Oden was a participant within the meaning of ERISA § 3(7), 29 U.S.C. § 1002(7) in the retirement plan sponsored by the Daughters of Charity Health System and later sponsored by Verity. During the time that the Plan was sponsored by the Daughters of Charity Health System, there was no single document that constituted the written instrument of the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102. Based on the document provided by the PBGC to Plaintiff, as of 2015, the written instrument of the Plan within the meaning of ERISA § 402, 29 U.S.C. § 1102, was entitled the Verity Health System Retirement Plan (Amended and Restated Effective December 14, 2015) ("the 2015 Plan Document").

46.     Based on the 2015 Plan Document, the Plan's standard form of benefit was a monthly payment to participants upon retirement. The monthly benefit amount was calculated using a formula that took into account factors including the participant's earnings prior to retirement and years of service.

47.     The Plan provided for the election of one of several alternative forms of pension. Loraine Oden elected a form of pension described by the Plan Document as the "contingent retirement income option." This option provided for a reduced retirement income to the retired participant, but provided a contingent annuitant designated by the retired participant a monthly retirement income from the death of the participant through the death of the annuitant.

AMENDED COMPLAINT                                                                                              16

48.    Plaintiff Rachel Oden, Loraine Oden's daughter, was her beneficiary and designated contingent annuitant under the Plan.

49.    Upon Loraine Oden's death, Rachel Oden began to receive a monthly benefit in the amount of $830.98.

**Background of the Plan**

50.    The Daughters of Charity Health System was a California not-for-profit corporation organized under, and governed by, California's Nonprofit Corporation Law, California Corporations Code §§ 5000 *et seq*.

51.    Until 1995, the Daughters of Charity Health System member hospitals were part of the Daughters of Charity National Health System, which was established in 1986.

52.    In 1995, six hospitals—O'Connor Hospital in San Jose, California, St. Louise Regional Hospital in Gilroy, California, Seton Medical Center in Daly City, California, Seton Coastside in Moss Beach, California, St. Francis Medical Center in Lynwood, California, and St. Vincent Medical Center in Los Angeles, California—spun off from the Daughters of Charity National Health System and merged into Catholic Healthcare West.

53.    According to the Verity Health System Retirement Plan's Form 5500 for the Plan Year ending December 31, 2015, the Plan was originally effective May 25, 1995, as a result of the spin-off of assets and liabilities from the Daughters of Charity National Health System Retirement Plan.

54.    In 2001 and 2002, the six hospitals withdrew from Catholic Healthcare West and reincorporated as the Daughters of Charity Health System.

55.    The Plan was, until December 14, 2015, operated under the name "The Daughters of Charity Health System Retirement Plan."

56.    The Plan covered Daughters of Charity Health System employees at member hospitals St. Francis Medical Center and St. Vincent Medical Center, as well as at the Daughters of Charity Health System's central system office.

AMENDED COMPLAINT                                                                 17

57. Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System described the benefits provided by the Plan to employees in various communications, but never established the Plan pursuant to a written instrument.

58. The Daughters of Charity Health System was responsible for setting the funding requirements of the Plan, as well as setting a funding policy for the Plan. Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System failed to set a funding policy that would adequately fund the anticipated obligations of the Plan every year since at least approximately 2010.

59. Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System had failed to make contributions to the Plan in satisfaction of the minimum funding requirements of ERISA § 302, 29 U.S.C. § 1082 since at least 2002.

60. Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), in 2012, the Daughters of Charity Health System adopted a funding policy that amortized over ten years the unfunded liability as of January 1, 2012, and required the Health System to make payments accordingly. By that point, the Plan was already underfunded by millions of dollars.

61. As of December 31, 2013, the Daughters of Charity National Health System Retirement Plan was underfunded by more than $229 million.

62. By adopting a funding policy that amortized over ten years the significant unfunded liabilities of the plan, the Daughters of Charity Health System made the decision not to address the Plan's severe underfunding in a timely fashion, instead endangering the retirement security of thousands of Plan participants.

AMENDED COMPLAINT 18

63. In setting a funding policy that was so profoundly inadequate, the Daughters of Charity Health System and other fiduciaries of the Plan breached their duties under ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1)(A) (B), to administer the plan prudently and in the best interests of Plan participants and beneficiaries.

64. According to the Plan's Form 5500 for the Plan Year ending December 31, 2015, the Daughters of Charity Health System and its Benefits Administration Committee operated the Plan as if it were a "church plan" described in IRS Code section 414(e) and operated the Plan as if it was exempt from Title I and Title IV of ERISA.

65. Yet the Plan was not, in fact, a church plan under ERISA. Under ERISA § 3(33), 29 U.S.C. § 1002(33), only two types of plans may qualify as a church plan. *First*, under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A), a plan established and maintained by a church or convention or association of churches, can qualify under certain circumstances and subject to the restrictions of ERISA § 3(33)(B), 29 U.S.C. § 1002(33)(B). *Second*, under ERISA § 3(33)(C)(i), 29 U.S.C. § 1002(33)(C)(i), a plan can qualify if it is maintained by an organization, the principal purpose or function of which is the administration or funding of a plan for the provision of retirement benefits or welfare benefits, or both, for the employees of a church or a convention or association of churches, if such organization is controlled by or associated with a church or convention or association of churches, subject to the restrictions of ERISA § 3(33)(B) , 29 U.S.C. § 1002(33)(B).

66. First, this Plan was established by the Daughters of Charity Health System, not by a church or convention or association of churches. Therefore the Plan was not a church plan under ERISA § 3(33)(A), 29 U.S.C. § 1002(33)(A).

67. Second, this Plan was maintained by the Daughters of Charity Health System and by the Benefits Administration Committee that had been delegated

AMENDED COMPLAINT                                                                      19

plan administration responsibilities. The principal purpose or function of the Daughters of Charity Health System was operating a system of hospitals, not the administration or funding of a retirement plan. The Benefits Administration Committee also was not associated with a church. Rather, it was associated with the Daughters of Charity Health System, which was not a church, and operated like any other secular, nonprofit, multi-hospital health system.

68.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), by 2014 the Daughters of Charity Health System had more than 7,500 employees.

69.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System specifically did not limit employment to those of the Catholic faith, instead hiring employees without any reference to creed or religion.

70.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the management of the Daughters of Charity Health System was composed primarily of lay people. Its executive officers received compensation in line with executive officers of other hospital systems. At least ten officers or key employees received reportable compensation in excess of half a million dollars in 2013.

71.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System included numerous clinics, physician groups, and individual physician practices throughout California. Many of these practices provided medical services contradicting the teachings of the Roman Catholic Church, including prescribing contraceptives and performing sterilization procedures.

72.    Based on the Complaint in *Morris v. Daughters of Charity Health System*, 3:14-cv-04681-VC (N.D. Cal.), the Daughters of Charity Health System

AMENDED COMPLAINT                                                                  20

employed chaplains of non-Catholic faiths and offered contact with the minister, priest, rabbi, or spiritual leader of its patients' choosing.

73.    Based on Plaintiff's conversations with her late mother, Loraine Oden, there was no requirement for employees or patients of hospitals associated with the Daughters of Charity Health System to attend mass or otherwise participate in Roman Catholic worship services.

74.    As a result of the foregoing, the Daughters of Charity Health System thus lacked "common religious bonds and convictions" with the Roman Catholic Church in the sense of ERISA 3(33)(C)(iv).

75.    On information and belief, the Benefits Administration Committee had no separate association with the Roman Catholic Church. The Benefits Administration Committee thus lacked "common religious bonds and convictions" with the Roman Catholic Church in the sense of ERISA 3(33)(C)(iv).

76.    Therefore, the Plan was not a church plan under ERISA.

**Daughters of Charity Health System Becomes Verity Health System**

77.    Based on filings in the Bankruptcy Court for the Central District of California, in July of 2015, the Daughters of Charity Health System closed a recapitalization transaction with Blue Mountain Capital Management (the "Verity Transaction"). In the Verity Transaction, the Daughters of Charity Health System was renamed Verity Health System.

78.    Based on contemporaneous news coverage of the Verity Transaction by Catholic Health World, any relationship between Daughters of Charity Province of the West and the hospital system ended at the time of the transaction. Verity Health System was an avowedly secular nonprofit.

79.    Based on the 2015 Plan Document, the Plan was amended and restated at that time so as to make it expressly subject to the requirements of ERISA because it was "no longer intended to be a 'church plan' ... and is therefore subject to, and is intended to comply with, Title I and Title IV of ERISA."

AMENDED COMPLAINT                                                          21

80.    Based on the Form 5500 for Verity Health System Retirement Plan B for the period ending December 31, 2016, the Board of Directors of Verity Health Systems converted the Verity Health System Retirement Plan into the Verity Health System Retirement Plan A effective December 31, 2016. At the same time, certain assets of the Plan and certain participants in the Plan were spun off into the Verity Health System Retirement Plan B.

81.    On information and belief, the terms of Verity Health System Retirement Plan B were materially similar to the terms of the Plan and the Plan was administered by the same Benefits Administration Committee.

82.    According to a declaration dated April 23, 2019, from Carlos De la Parra who was a director of Willis Towers Watson, actuary to Verity Health Systems for Verity Health System Retirement Plan A and Verity Health System Retirement Plan B, the Plans "were significantly underfunded when Verity took them over on December 14, 2015."

**Defendants Knew Or Should Have Known of the Existence of Issues With Daughters of Charity's Claimed Church Plan Exemption**

83.    Not only would all of the Defendant been aware of the significant underfunding of the Plans, but by 2015, there were a number of lawsuits challenging the claimed church plan status of plans like these Plans.

84.    By July 26, 2016, the Ninth Circuit had issued a decision in *Rollins v. Dignity Health,* 830 F.3d 900, 905 (9th Cir. 2016), holding that "in order to qualify for the church-plan exemption under [ERISA], a plan must have been established by a church *and* maintained either by a church or by a principal-purpose organization."

85.    By June 2017, the Supreme Court had issued a decision in *Advocate Health Care Network v. Stapleton,* 581 U.S. 468, 483 (2017) holding that ERISA provides (1) that a "church plan" means a "plan established and maintained ... by a

AMENDED COMPLAINT                                                          22

church" and (2) that a "plan established and maintained ... by a church" is to "include[ ] a plan maintained by" a principal-purpose organization.

86. These decisions were widely published in a variety of publications designed for employers who sponsor pension plans and those in the healthcare industry including the following:

- *Supreme Court to Consider Health System Church Plan Status*, HealthLeadersMedia (Dec. 12, 2016), https://www.healthleadersmedia.com/finance/supreme-court-consider-health-system-church-plan-status

- *Supreme Court Ruling Did Not Resolve Church plan Challenges* PlanSponsor (June 14, 2017), *https://www.plansponsor.com/supreme-court-ruling-did-not-resolve-church-plan-challenges/*;

- *9th Circuit Agrees Dignity Health Pension Plan is Not A Church Plan*, Plan Advisor (July 29, 2016), *https://www.planadviser.com/9th-circuit-agrees-dignity-health-pension-plan-is-not-a-church-plan/*;

87. By December 2015 and thereafter, persons who were officers and directors of healthcare companies like Verity or fiduciaries of pension plans should have and likely would have been aware of the challenges to the claimed church plan status of plans sponsored by entities like Daughters of Charity. To the extent that persons who were fiduciaries of the Verity Plans did not fully understand the legal ramifications of these decisions, there was sufficient publicly reported information by which a prudent and loyal fiduciary should have obtained a legal advice, particularly given the severe underfunding of the Verity Plans and the lack of or limited amount of PBGC insurance available to participants in the Verity Plans given the previously claimed church plan status.

**The Plan is Terminated and Plaintiff's Benefits are Reduced**

88. Verity Health System filed for bankruptcy protection on August 31, 2018.

AMENDED COMPLAINT 23

89.     Based on a document entitled "Questions and Answers for Participants in the Verity Health System Pension Plans" (the "PBGC Q&A") provided to Plaintiff by the Pension Benefit Guaranty Corporation ("PBGC"), Verity Health System Retirement Plan A and Verity Health System Retirement Plan B were terminated as of April 30, 2019.

90.     Based on the PBGC Q&A, the PBGC took responsibility as trustee for the Verity Health System Retirement Plan A and Verity Health System Retirement Plan B as of October 15, 2019.

91.     Based on the PBGC Q&A, following its termination the Verity Health System Retirement Plan A covered nearly 7,000 people but was only 52% funded—an underfunding of $306 million. At the time of its termination, the Verity Health System Retirement Plan B covered approximately 1,000 people and was 74% funded—an underfunding of $2.8 million.

92.     The PBGC is a federal agency created by ERISA to protect pension benefits in defined benefit plans. If a pension plan is insured by the PBGC and it terminates without sufficient money to pay all benefits, PBGC's insurance program will pay participants the benefit provided by the pension plan up to the limits set by law.

93.     As the PBGC explained in an Estimated Benefit Calculation provided to Plaintiff, "church plans are not required to obtain PBGC coverage." The Verity Health System Retirement Plan A obtained PGBC coverage on December 14, 2015, when it was amended and restated to make it expressly subject to the requirements of ERISA, and only began paying PBGC insurance premiums from that point forward.

94.     Based on an Estimated Benefit Calculation provided by the PBGC to Plaintiff, because the Verity Health System Retirement Plan A had only been covered by PBGC insurance for two full years as of the date Verity Health Systems

AMENDED COMPLAINT                                                             24

declared bankruptcy, the PBGC only guaranteed 40% of the pension benefits of Plaintiff and the Class.

95.    As a result of this reduced guarantee, in an Estimated Benefit Calculation provided by the PBGC to Plaintiff the PBGC calculated that Plaintiff's Plan monthly benefit would be reduced from $830.98 to $540.14 beginning September 1, 2020. Had the Plan been operated as an ERISA-covered plan by August 31, 2013, Plaintiff's monthly benefit would have been $830.14.

96.    In a form communication, the PBGC explicitly informed Plaintiff that her benefit was being reduced because the Plan had been underfunded and underinsured. Under a heading reading "**Why is my benefit being reduced**?" the PBGC explained:

> PBGC cannot pay your full benefit *because the Verity pension plans were not covered by PBGC insurance for the time period required by law for a full guarantee*. Under federal law, a pension plan must be insured for five full years for the PBGC guarantee to be fully phased-in. PBGC guarantees 20% of the benefit for each full year the plan was insured before the sponsoring employer files for bankruptcy.

> When Verity filed for bankruptcy protection on August 31, 2018, the plan had been covered by PBGC only for two full years. This means PBGC can guarantee 40% of your plan benefit. Some participants will receive more than 40% because the pension plan had enough assets to make up part of the shortfall between the PBGC guarantee and the full benefit.

(emphasis added)

97.    In June 2020, Plaintiff requested information from the PBGC including "the Verity Health System Plan documents." The only document produced by the PBGC in response was the written instrument of the Verity Health System Retirement Plan, amended and restated December 14, 2015.

98.    In March of 2023, Plaintiff requested from the PBGC all the documents described by ERISA § 104(b), including "(1) the latest updated

AMENDED COMPLAINT                                                                25

summary plan description; (2) any summaries of material modifications to the Plan; (3) the latest full annual report, including a statement of assets and liabilities of the plan and accompanying notes as well as a statement of income and expenses of the Plan, and accompanying notes, (4) any summary annual reports for the Plan, (5) any bargaining agreement, trust agreement, contract, or (6) other instruments under which the plan is established or operated, and any applicable amendments, and (7) my annual benefit statements." PGBC responded by producing only its correspondence to Plaintiff dated July 8, 2020, explaining that her monthly benefit was being reduced.

**Select Provisions of the 2015 Plan Document**

99.    Since 2015, the written instrument of the Plan, within the meaning of ERISA § 402, has been the 2015 Plan Document.

100.    Section 2.4 of the 2015 Plan Document defined "Administrator" as "the Plan Sponsor or other person (including a committee) appointed to administer the Plan in accordance with Article 3."

101.    Section 3.1 of the 2015 Plan Document provided in relevant part that "The Plan will be administered by the Administrator which shall be the Plan Sponsor or any person, including a committee consisting of at least three individuals, appointed from time to time by the Board of Directors."

102.    Section 3.2 of the 2015 Plan Document provided in relevant part that "The Administrator will have full discretionary power and authority to administer the Plan in all of its details, subject, however, to the requirements of ERISA. For this purpose the Administrator's discretionary power and authority will include, but will not be limited to, the following: (a) To make and enforce such rules and regulations as it deems necessary or proper for the efficient administration of the Plan; (b) To interpret the Plan, its interpretation thereof in good faith to be final and conclusive on all persons claiming benefits under the Plan; (c) To decide all questions concerning the Plan and the eligibility of any person to participate in the

AMENDED COMPLAINT                                                                        26

Plan; (d) To compute the amount of benefits which will be payable to any Participant or other person in accordance with the provisions of the Plan, and to determine the person or persons to whom such benefits will be paid; (e) To authorize the payment of benefits; (f) To appoint such agents, counsel, accountants, consultants and actuaries as may be required to assist in administering the Plan; and (g) To allocate and delegate its fiduciary responsibilities under the Plan, and to designate other persons to carry out any of its fiduciary responsibilities under the Plan, any such allocation, delegation or designation to be by written instrument and in accordance with section 405 of ERISA."

103.   Section 3.5 of the 2015 Plan Document provided that "The Administrator will be a "named fiduciary" for purposes of section 402(a)(1) of ERISA with authority to control and manage the operation and administration of the Plan. The Administrator will be responsible, among other things, for complying with the reporting and disclosure requirements of Part I of Subtitle B of Title I of ERISA."

**Allegations Regarding ERISA's Statute of Limitations**

104.   ERISA § 413, 29 U.S.C. § 1113 provides that

No action may be commenced under this subchapter with respect to a fiduciary's breach of any responsibility, duty, or obligation under this part, or with respect to a violation of this part, after the earlier of—

(1) six years after (A) the date of the last action which constituted a part of the breach or violation, or (B) in the case of an omission the latest date on which the fiduciary could have cured the breach or violation, or

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation;

except that in the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach or violation.

AMENDED COMPLAINT                                                            27

105.   The violations alleged in this complaint are in the nature of omissions: the failure of the Plan's fiduciaries following its formal amendment and conversion to an ERISA governed plan on December 14, 2015, to take any action against the prior employer, Daughters of Charity Health System or the Plan fiduciaries who had for years improperly operated the Plan as a church plan, leading to its persistent underfunding and failure to pay PBGC premiums.

106.   Defendants could have taken corrective action, including bringing suit to cure these violations until at least October 15, 2019, when the PBGC assumed control of the Plans.

107.   To the extent the underlying claims against the Daughters of Charity Health System or the Plan fiduciaries were based in ERISA, the statute of limitations on those claims would not have expired until six years after December 14, 2015, or December 14, 2021. To the extent the underlying claims against the Daughters of Charity fiduciaries were based in state law, California's four year statute of limitations for breaches of fiduciary duty would have applied and expired on December 14, 2019.

108.   The statute of limitations under ERISA § 413(1)(B) on the claims brought by Plaintiff does not expire until at least October 15, 2025, six years after October 15, 2019.

109.   Plaintiff first learned that her benefits would be reduced due to the underfunding and underinsurance of the Plan by a letter from the PBGC in June 2020. But that letter informed Plaintiff that the "pension plan was a church plan, sponsored by a religious organization." Plaintiff did not learn until at least December 2023 (if not later) that the pension plan had not been sponsored by a church or other religious organization for some years prior to the acquisition by Verity. Only sometime after December 2023 did Plaintiff obtain actual knowledge of the facts that the Plan had been administered by the Benefits Administration Committee, the identities of the some of the members of the Benefits

AMENDED COMPLAINT                                                                28

Administration Committee, and the facts that the both the Daughters of Charity Health System and the Benefits Administration Committee lacked common bonds and conviction with the Roman Catholic Church and that the prior fiduciaries of the Plan had failed to take steps to protect the participants by no earlier than December 2023. The statute of limitations under ERISA § 413(2) would thus run no later than December 2026 and Plaintiff's claims are timely.

110. Additionally, as Plan Administrator of the Plan, the Benefits Administration Committee was responsible for filing the annual report of the Plan (known as the Form 5500) with the United States Department of Labor and the Internal Revenue Service. In the Form 5500s beginning with the 2016 Form 5500 filed on October 2017, the Benefits Administration Committee Defendants made the following false and/or misleading statements that concealed the breaches by the Benefits Administration Committee Defendants and the Director Defendants:

a. The 2015 Form 5500 filed in October 2017 and signed by Michael Katz that when the Plan was established and maintained by the Daughters of Charity, it was "exempt from Title I and Title IV of ERISA." The 2015 Form 5500 also stated that "the plan sponsor is no longer "controlled by or affiliated with the Catholic Church."  This was misleading because it implied that the Daughters of Charity Health System was controlled by or was affiliated with Roman Catholic Church or had sufficient connection with the Roman Catholic Church for its Plan to qualify as a church plan when it did not.

b. The 2016 Form 5500 filed in October 2017 and signed by Steve Sharrer represented in Note 1 to the Financial Statements that when the Plan was established and maintained by the Daughters of Charity, it "was qualified as a church plan under Section 3(33) of ERISA." This was false because the Plan did not qualify as a church plan. It was also misleading because it suggested that some authority (e.g. the IRS or DOL) had qualified

AMENDED COMPLAINT                                                                        29

it as such. Note 1 to the Financial Statements in the 2016 Form 5500s also stated that "the Plan was not subject to ERISA or to audits." This was also false or misleading because the Plan was in fact subject to ERISA and should have been audited.

c.    The 2017 Form 5500 filed in October 2018 and signed by Steve Sharrer represented that when the Plan was established and maintained by the Daughters of Charity, it was "a church plan under Section 3(33) of ERISA." This was false because the Plan did not qualify as a church plan. The 2017 Form 5500 also stated that during that time "the Plan was not subject to ERISA or to audits." This was also false or misleading because the Plan was in fact subject to ERISA and should have been audited. The 2017 Form 5500 also stated that once the Daughters of Charity Health System was restructured to become Verity Health System, it "ceased to be controlled by or affiliated with the Roman Catholic Church." This was misleading because it implied that the Daughters of Charity Health System controlled by or was affiliated with Roman Catholic Church or had sufficient connection with the Roman Catholic Church for its Plan to qualify as a church plan when it did not.

d.    The 2018 Form 5500 filed in October 2019 and signed by Steve Sharrer again represented in Note 1 to the Financial Statements that when the Plan was established and maintained by the Daughters of Charity, it was "a church plan under Section 3(33) of ERISA." This was false because the Plan did not qualify as a church plan. Note 1 to the Financial Statements to the 2018 Form 5500 also stated that during that time "the Plan was not subject to ERISA or to audits." This was also false or misleading because the Plan was in fact subject to ERISA and should have been audited. Note 1 to the Financial Statements to the 2018 Form 5500 also stated that once the Daughters of Charity Health System was restructured to become Verity

AMENDED COMPLAINT                                                                 30

Health System, it "ceased to be controlled by or affiliated with the Roman Catholic Church."  This was misleading because it implied that the Daughters of Charity Health System was controlled by or affiliated with Roman Catholic Church or had sufficient connection with the Roman Catholic Church for its Plan to qualify as a church plan when it did not.

e.      The 2019 Form 5500 filed in October 2020 and signed by Peter Chadwick represented in Note 1 to the Financial Statements that when the Plan was established and maintained by the Daughters of Charity, it was "a church plan under Section 3(33) of ERISA." This was false because the Plan did not qualify as a church plan. Note 1 to the Financial Statements in the 2019 Form 5500 also stated that during that time "the Plan was not subject to ERISA or to audits."  This was also false or misleading because the Plan was in fact subject to ERISA and should have been audited. Note 1 to the Financial Statements in the 2019 Form 5500 also stated that once the Daughters of Charity Health System was restructured to become Verity Health System, it "ceased to be controlled by or affiliated with the Roman Catholic Church."  This was misleading because it implied that the Daughters of Charity Health System was controlled by or affiliated with Roman Catholic Church or had sufficient connection with the Roman Catholic Church for its Plan to qualify as a church plan when it did not.

111.   While the Form 5500s were signed by a single member of the Benefits Administration Committee, all member of the Committee at the time that the Form 5500 was filed were responsible as part of their ERISA statutory duties and their fiduciary duties to ensure that the information contained in the Form 5500s were accurate. As such, the false and misleading information contained in the Form 5500s are attributable to all of the members of the Benefits Administration Committee at the time when those Form 5500s were filed.

AMENDED COMPLAINT                                                          31

112. As part of their duties to monitor the members of the Benefits Administration Committee, the Director Defendants had an obligation to ensure that the Benefits Administration Committee members were not providing false or misleading information in the Form 5500s. Upon information and belief the Director Defendants either knew or were reckless in not knowing that the information in the Form 5500s was false or misleading.

113. Finally, each of the Defendants were fiduciaries and as such had an affirmative obligation to disclose information known to them that the participants needed to know about their benefits. Each of the Defendants either knew or were reckless in not knowing that the Daughters of Charity Health System was not controlled by and was not affiliated with Roman Catholic Church or had insufficient connection with the Roman Catholic Church for its Plan to qualify as a church plan. Yet, none of the Defendants disclosed this information to Plaintiff or upon information and belief, to other participants or beneficiaries in the Plan.

## COUNT I
**Breach of Fiduciary Duty in Violation of ERISA § 404(a)(1)(A) and (B), 29 U.S.C. § 1104(a)(1), Against the Benefits Administration Committee Defendants Pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3)**

114. Plaintiff incorporates the preceding paragraphs as though set forth herein.

115. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and (A) for the exclusive purpose of (i) providing benefits to participants and their beneficiaries; and …. (B) with "care, skill, prudence, and diligence."

116. Among the assets of an employee benefit plan under ERISA is a "chose in action"—the right to bring an action to recover a debt, money or a thing—including to institute a lawsuit for a breach of fiduciary duties or other violations including failure to properly fund the plan or pay PBGC premiums. Prior

AMENDED COMPLAINT                                                        32

to December 14, 2015, the Daughters of Charity Health System and prior Plan fiduciaries had improperly operated the Plan as a church plan, had failed to comply with ERISA's pension funding requirements, had failed to pay PBGC premiums and breached their fiduciary duties.

117.   Pursuant to Section 3.2 of the 2015 Plan Document, the Plan Administrator had "full discretionary power and authority to administer the Plan in all its details.

118.   Pursuant to Section 3.2(f) of the 2015 Plan Document, the Plan Administrator had the power to "appoint such agents, accountants, consultants, and actuaries as may be required to assist in administering the Plan."

119.   As a result of the provisions in Section 3.2, the Plan Administrator had the power to bring actions on behalf of the Plan and the authority to institute claims against the Plan's prior fiduciaries and employer/plan sponsor.

120.   Section 3.1 of the 2015 Plan Document provides that the Plan was administered by "the Administrator which shall be the Plan Sponsor or any person, including a committee consisting of at least three individuals, appointed from time to time by the Board of Directors…."

121.   Based on a declaration executed by Defendant Sharrer in connection with the Verity bankruptcy, the Board of Directors of Verity Health Systems appointed the Benefits Administration Committee to act as or on behalf of the Plan Administrator.

122.   Based on the Plan's provision giving the Benefits Administration Committee the power to appoint agents as required to assist in managing the Plan, the Benefits Administration Committee Defendants had the power to engage counsel to institute claims against Daughters of Charity Health System and prior Plan fiduciaries.

123.   The Benefits Administration Committee Defendants also had the power to institute claims for prohibited transactions under ERISA against Verity

AMENDED COMPLAINT                                                                 33

Health Systems because the failure to set a prudent funding policy constituted an extension of credit by the Plan to Verity Health System in violation of ERISA § 406(a)(1)(B), 29 U.S.C. § 1106(a)(1)(B).

124.   Alternatively, the Benefits Administration Committee Defendants, had the power to institute claims for breach of fiduciary duty under California state law against Plan fiduciaries and Daughters of Charity Health System (and its successor, Verity Health System) which had caused the persistent and severe underfunding of the Plan and adopted inadequate measures to remedy its severe underfunding.

125.   Had the Benefits Administration Committee Defendants instituted claims in litigation against the pre-Verity fiduciaries or the Daughters of Charity Health System pursuant to either ERISA or California state law, Defendants would have recovered assets for the benefit of the Plan that would have mitigated or eliminated the underfunded status of the Plan or could have required payment of PBGC premiums.

126.   Had the Benefits Administration Committee Defendants eliminated the underfunded status of the Plan through such litigation prior to October 15, 2019 or provided the proper premium payments, when the PBGC took responsibility for the Plans, the benefits of Plaintiff and other members of the Class would have been paid in full.

127.   Had Defendants mitigated the underfunded status of the Plan through such litigation prior to October 15, 2019, when the PBGC took responsibility for the Plans or required payment of the PBGC premiums, the benefits of Plaintiff and other members of the Class would not have been reduced or would have been reduced by less because of the additional Plan assets available for the PBGC to allocate among participants in the Plans.

128.   In failing to manage the choses-in-action of the Plans against the pre-Verity fiduciaries, Defendants thus failed to manage the assets of the Plan with

AMENDED COMPLAINT                                                                                    34

care, skill, diligence, and prudence in violation of ERISA § 404(a)(1)(B), 29 U.S.C. § 1104(a)(1)(B).

129.    The defendants in such an action would have included Verity Health Systems (as successor of Daughters of Charity Health Systems) as well as former or current members of the Benefits Administration Committee appointed by the Daughters of Charity Health Systems. On information and belief, Defendants' failure to manage the chose-in-action of the Plans against former fiduciaries were motivated at least in part by unwillingness on the part of members of the Benefits Administration Committee to sue themselves, other executives and employees of Verity Health Systems, or Verity Health Systems. Defendants thus placed the interests of themselves, of other executives and employees of Verity Health Systems, and of Verity Health Systems ahead of the interests of participants in the Plans in violation of ERISA § 404(a)(1)(A), 29 U.S.C. § 1104(a)(1)(A).

## COUNT II
### Breach of Duty to Monitor Pursuant to
### ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B)
### Against the Director Defendants

130.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

131.    Pursuant to Section 3.1 of the 2015 Plan Document, the Board of Directors of Verity Health System appointed the Benefits Administration Committee and had the power to remove them. Pursuant to that authority, the Director Defendants had a duty to monitor the Trustees' conduct and to take appropriate action if those fiduciaries were not adequately protecting the interests of the ESOP participants, including removing the Trustees and/or correcting any breaches.

132.    The Director Defendants knew, or, if they had properly performed their duty to monitor pursuant to prudent monitoring procedures, would have

AMENDED COMPLAINT                                                      35

known that the Daughters of Charity pension plan had been improperly operated as a church plan prior to the Verity Transaction, and that the Benefits Administration Committee Defendants had taken no action to institute litigation against Daughters of Charity Health System and the former fiduciaries of the Plan who had caused it to be improperly operated as a church plan.

133.   The Director Defendants nevertheless took no steps to protect Plan participants or otherwise remedy the violations, including by as necessary removing the members of the Benefits Administration Committee and appointing members who would pursue claims against the Daughters of Charity Health System and/or the former fiduciaries of the Plan.

134.   By failing to properly monitor and/or take appropriate action against the Benefits Administration Committee Defendants, the Director Defendants breached their fiduciary duties under ERISA § 404(a)(1)(A) & (B), 29 U.S.C. § 1104(a)(1)(A) & (B).

**COUNT III**
**Co-Fiduciary Liability Pursuant to ERISA § 405, 29 U.S.C. § 1105**
**Against All Defendants**

135.    Plaintiff incorporates the preceding paragraphs as though set forth herein.

136.   ERISA § 405, 29 U.S.C. § 1105, makes a fiduciary of a Plan liable for another fiduciary of the same plan's breach when (2) "by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach;" or (3) "he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

137.   Each of the Defendants knew or through a proper review would have discovered that the Daughters of Charity Health System and the pre-Verity fiduciaries had purported to operate the Plan as a church plan in violation of

AMENDED COMPLAINT                                                                                    36

ERISA. Had Defendants properly exercised their fiduciary duties, Defendants would have discovered that operating the Plan as a church plan was improper and the prior fiduciaries had breached their fiduciary duties and the prior fiduciaries and the Daughters of Charity Health System engaged in prohibited transactions in violation of ERISA.

138.   Had they properly exercised their fiduciary duties, the Benefits Administration Committee Defendants would have been fully informed as to the persistent and severe underfunded status of the plan, the failure to pay PBGC premiums and the lack of any common religious bonds and convictions between either the Daughters of Charity Health System or the Benefits Administration Committee on the one hand and the Roman Catholic Church on the other hand.

139.   Because they were empowered to employ legal and other advisors, the failure of the Benefits Administration Committee Defendants to bring suit against the Daughters of Charity Health System and the pre-Verity fiduciaries breached their duties to comply with ERISA § 404(a)(1) in the administration of their specific responsibilities as fiduciaries including by, if necessary, bringing suit against the pre-Verity Transaction fiduciaries and Daughters of Charity Health System. This failure enabled the pre-Verity Transaction fiduciaries and Daughters of Charity Health System to violate ERISA in holding out the Plan as a church plan, persistently and severely underfunding the plan, causing the Plan to extend credit to the Daughters of Charity Health System, and failing to adopt a funding strategy reasonably calculated to address the Plan's underfunding in a timely fashion and failing to pay PBGC premiums.

140.   As members of the Board of Directors of Verity Health System, the Director Defendants would have been fully informed as to the persistent and severe underfunded status of the plan, the failure to pay PBGC premiums and the lack of any common religious bonds and convictions between either Daughters of Charity

AMENDED COMPLAINT                                                                 37

Health System or the Benefits Administration Committee on the one hand and the Roman Catholic Church on the other hand.

141. Because they had the power to appoint and remove members of the Benefits Administration Committee, the failure of the Director Defendants to monitor the Benefits Administration Committee and, as necessary, remove its members enabled the Benefits Administration Committee Defendants to violate ERISA by violating their fiduciary duties to bring suit against the former fiduciaries of the Plan.

## ENTITLEMENT TO RELIEF

142. By virtue of the violations set forth in the foregoing paragraphs, Plaintiff and the Class are entitled pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), to sue each of the Defendants for any appropriate equitable relief to redress the wrongs described above.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays that judgment be entered against Defendants on each claim and be awarded the following relief:

A. Declare that Defendants have each breached their fiduciary duties under ERISA and violated various statutory provisions of ERISA (or, alternatively, breached their fiduciary duties under California state law);

B. Award the equitable remedy of surcharge against Defendants to make Plaintiff and other members of the Class whole;

C. Require Defendants to pay attorneys' fees and costs pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g);

D. Award pre-judgment interest and post-judgment interest; and

E. Award such other and further relief that the Court determines that Plaintiff is entitled to pursuant to ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3) or pursuant to Rule 54(c) of the Federal Rules of Civil Procedure or that is equitable and just.

AMENDED COMPLAINT                                                                38

Dated: January 31, 2025

Respectfully submitted,

R. Joseph Barton (SBN 212340)
THE BARTON FIRM LLP
1633 Connecticut Ave., N.W.
Suite 200
Washington, DC 20009
Tel: (202) 734-7046
Email: jbarton@thebartonfirm.com

*Attorney for Plaintiff*

AMENDED COMPLAINT

39